PEOPLE v PASHIGIAN

Docket No. 78516. Submitted December 10, 1985, at Detroit.—Decided January 28, 1986.

Samuel Pashigian was convicted of a violation of the Precious Metal and Gem Dealer Act by failing to record the purchase of a ring as required by the act, Wayne Circuit Court, Arthur M. Bowman, J. Defendant appealed, alleging several errors. *Held:*

1. Statements made by the defendant to the arresting officer, upon the officer's initial inquiry into the matter of the sale of the ring, were admissible into evidence even though made prior to defendant's being advised of his rights pursuant to *Miranda v Arizona*. At the time the statements were made the police questioning was intended to uncover whether in fact a crime had been committed. Furthermore, the investigation could not truly focus on any person, for purposes of the rule of *Miranda,* until it was determined that a crime had in fact occured.

2. Seizure of the ring without a warrant was proper under the "pervasively regulated industry" doctrine, which allows such a seizure in a regulated commercial business where certain conditions are met. All of the requisite conditions were met in this case.

3. The trial court's instructions to the jury regarding certain exceptions to the act were not improper and, when viewed as a whole, adequately instructed the jury on the essential elements of the charged offense.

4. Defendant's allegation that error occurred when one of the defense exhibits was not given to the jury for use during deliberations is without merit.

5. Defendant's other allegations of error were not preserved

REFERENCES

Am Jur 2d, Criminal Law §§ 791 *et seq.*

Am Jur 2d, Searches and Seizures §§ 35 *et seq.*

What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

Necessity of informing suspect of rights under privilege against self-incrimination prior to police interrogation. 10 ALR3d 1054.

See also the annotations in the ALR3d/4th Quick Index under Search and Seizure.

for appeal and were not of such magnitude as to prejudice the defendant.

Affirmed.

1. CRIMINAL LAW — *MIRANDA* WARNINGS — FOCUS OF INVESTIGATION.

A person may properly be questioned by police, without having been given *Miranda* warnings, where at the time of the questioning it has not been determined whether a crime has been committed and the intent of the questioning is to determine whether a crime has been committed; until it has been determined that a crime has actually occurred, a criminal investigation cannot truly focus on any person for purposes of application of the *Miranda* rules.

2. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — REGULATED INDUSTRIES.

A search and seizure made without a warrant is not unreasonable per se in a "pervasively regulated industry", provided certain conditions are met.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Robert L. Blamer),* for defendant on appeal.

Before: DANHOF, C.J. and J. H. GILLIS and M. WARSHAWSKY,* JJ.

PER CURIAM. Defendant was convicted of violating the Precious Metal and Gem Dealer Act, MCL 445.484; MSA 19.720(4) and MCL 445.489; MSA 19.720(9). The conviction stems from defendant's failure to record on a "record of transaction" form the details of his purchase of a ring from a Mr. Kopel.

On October 26, 1983, Dennis Farmer, an off-duty

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Livonia police officer working as a security guard at the Livonia Mall, noticed several teenagers congregating in front of the defendant's place of business. Three of the boys went inside and were seen talking with the defendant. Two of the boys rejoined the others and proceeded toward an exit, whereupon they were stopped by Officer Farmer and questioned. The fifth boy, Michael Andrews, was seen approaching the group, but he continued on past toward the exit. He was stopped and questioned by Officer Farmer, whereupon he informed the officer that he had sold a diamond ring to the defendant for $3.

After radioing for assistance, Farmer was joined by Livonia Police Officer Sherman, and they proceeded to defendant's shop with the Andrews boy to investigate the matter. Before arriving at defendant's shop, Andrews changed his story and admitted that defendant declined to buy the ring, directing the boy to Michel's Jewelry Store. Upon investigating the situation at Michel's, it was learned that a Mr. Kopel gave the boy $10 for the ring, removed the diamond, and took the setting to defendant. Defendant allegedly paid Mr. Kopel $10.

The officers then proceeded to the defendant's shop and indicated to him that Mr. Kopel had informed them that he sold a ring to defendant for $10. Defendant admitted buying the ring, but claimed to have paid only three or four dollars, and stated "anything under five, I don't have to record". The officers had not asked to see his transaction records at that point. Defendant then turned the ring over to Officer Sherman pursuant to the officer's request.

On appeal, defendant first argues that his statements to Officer Sherman should have been suppressed by the trial court since defendant was not

advised of his *Miranda*[1] rights pior to questioning. We disagree. Although the officers were aware that Mr. Kopel sold defendant a gold ring for $10, no crime occurred unless defendant failed to record the transaction on a record of transaction form as required by MCL 445.484; MSA 19.720(4) and MCL 445.489; MSA 19.720(9). The questioning of the defendant was therefore intended to uncover whether in fact a crime had been committed.

Even under the "focus" test for determining the applicability of *Miranda, People v Wallach,* 110 Mich App 37; 312 NW2d 387 (1981), we do not believe the defendant's statements were inadmissible. Until it has been determined that a crime has actually occurred, a criminal investigation cannot truly focus upon any person for *Miranda* purposes. We find no error. *People v Lobaito,* 133 Mich App 547, 553-554; 351 NW2d 233 (1984).

Defendant next argues that the gold ring should have been held inadmissible as evidence since it was seized without a warrant. We disagree, since we believe the seizure was proper under the "pervasively regulated industry" doctrine. *People v Barnes,* 146 Mich App 37; 379 NW2d 464 (1985). Under this doctrine, warrantless searches and seizures are not unreasonable per se in pervasively regulated industries if certain conditions are met. The application of this doctrine was described in *Tallman v Dep't of Natural Resources,* 421 Mich 585, 617-618; 365 NW2d 724 (1984), as follows:

"We conclude that conflicts arising under art 1, § 11 of the Michigan Constitution between the enforcement needs of governmental agencies and the privacy interests of regulated commercial actors should be resolved by balancing the following factors:

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

"(1) the existence of express statutory authorization for search or seizure;

"(2) the importance of the governmental interest at stake;

"(3) the pervasiveness and longevity of industry regulation;

"(4) the inclusion of reasonable limitations on searches in statutes and regulations;

"(5) the government's need for flexibility in the time, scope and frequency of inspections in order to achieve reasonable levels of compliance;

"(6) the degree of intrusion occasioned by a particular regulatory search; and

"(7) the degree to which a business person may be said to have impliedly consented to warrantless searches as a condition of doing business, so that the search does not infringe upon reasonable expectations of privacy." (Footnotes omitted.)

Applying these factors to the case at hand, we find the seizure of the ring to have been proper. Although the Precious Metal and Gem Dealer Act provides only for inspection, "any inspection implies a search and, by reasonable interpretation of legislative intent, a seizure". *Barnes,* p 42. Further, the importance of the governmental interest is high. The purpose of the statute is to prevent the theft of precious jewelry for cash resale. Although the statute has only been in existence for a few years, the legislation is quite detailed and is designed to deal with a problem of a longstanding nature. Further, reasonable limitations are placed on the inspections: only police and court prosecutors may perform such searches and inspections must be conducted only during business hours. These warrantless inspections are necessary to fulfill the purpose of the regulations. Otherwise, as in *Barnes,* the dealer might not keep sufficient records and might be careless in his purchasing practices. Also, since the inspections are conducted

during business hours, there is little intrusion. Finally, the statute provides that a dealer impliedly consents to the inspections as a condition of doing business. Therefore, in balancing each of the *Tallman* factors, we find that the seizure of the ring was valid and proper.

Defendant next complains of the trial court's instructions to the jury regarding certain exceptions to the class of "precious items" which are subject to the act, to wit: items purchased directly from a manufacturer, and items which do not have a jeweler's identifying mark and which a dealer purchases for less than $5. MCL 445.482(h)(iii) and (vii); MSA 19.720(2)(h)(iii) and (vii). Although the trial court did indeed give confusing instructions on the second exception, as evidenced by the jury's request for reinstruction on the subject, we find that the reinstruction was sufficient to clear up any confusion or misunderstanding. Reviewing the instructions as a whole, then, we conclude that they adequately informed the jury as to all the essential elements of the charged offense. *People v Stewart,* 126 Mich App 374, 377; 337 NW2d 68 (1983).

Defendant also argues that the jury should only have been instructed regarding the manufacturer's exception, without including the jeweler's mark exception. Defendant contends that, since the ring did in fact have a Meyer Treasure Chest mark on it, the exception contained in § 482(h)(vii) was irrelevant. However, defendant fails to indicate any prejudice which may have resulted from the court's inclusion of this exception in its instructions and we can find none. Since the exception which was in fact relevant in this case was properly presented to the jury, we find no error.

Next, defendant points to the fact that one of

the defense exhibits, an advertisement for Michel's Jewelry Store, had not been given to the jury to use during their deliberations. Defense counsel moved for a judgment notwithstanding the verdict on this ground, which was denied without comment by the trial court. We are aware of no case which holds that every exhibit introduced at trial must be sent to the jury room, even where the jury does not request the exhibit, for a conviction to be upheld. We can see no reason for such a rule since the jury was exposed to and became aware of the exhibit when it was introduced by the defendant during trial. The issue is without merit.

As his final claim of error on appeal, defendant points to several technical defects in the information. We find the issue waived on appeal due to defendant's failure to raise a timely objection. Further, the defects were not of such magnitude as to mislead the jury or otherwise prejudice the defendant, and thus we find no error. *People v Brady Smith,* 108 Mich App 338, 345; 310 NW2d 235 (1981). Further, the lack of evidence regarding the atomic weight of the gold is not fatal since the testimony of Mr. Kopel indicated that the ring was in fact gold. The jury was entitled to presume from this evidence that the ring was gold within the meaning of the statute.

Affirmed.