# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FARID YOUSSEF BAZZI,

Defendant-Appellant.

UNPUBLISHED
October 11, 2018

No. 342044
Marquette Circuit Court
LC No. 17-055734-FH

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of assault of a prison employee, MCL 750.197c, as a third offense habitual offender, MCL 769.11. Defendant was sentenced to a term of 2 to 10 years' imprisonment, to be served consecutively with his prior active sentences and with no credit for time served. Defendant appeals as of right. We affirm.

## I. FACTS

Robert Ganzel, a corrections officer at the Marquette Branch Prison (MBP), worked the night shift on January 3, 2017. Ganzel testified that, during his rounds, he noticed that his view of defendant had been obstructed by a hanging sheet in violation of the prison's rules. Ganzel attempted to get defendant's attention, but defendant did not respond. Fearing that something was wrong, Ganzel called for assistance, and another correctional officer responded. When the pair arrived at defendant's cell, defendant was responsive, and he eventually agreed to take down his sheet. Ganzel left with the other correctional officer. During his next round, Ganzel noticed that defendant had repositioned the sheet so that passing correctional officers could not see him. Ganzel began explaining to defendant that he needed to remain visible. At that point, defendant pulled back the sheet and spat in Ganzel's face. Ganzel pulled away and left the scene, attempting to clear his face as he went. Video evidence of the incident depicted Ganzel patrolling the cell block, standing for a short period of time in front of defendant's cell, and then recoiling sharply, jerking his head back as if struck by something. The video then showed Ganzel walking away from the cell at a deliberate pace, wiping his face as he left.

Defendant filed a motion seeking an order compelling the prosecution to produce "the security camera footage relating to the site of the alleged incident that covers the four hour period prior to the commission of the alleged offense by the Defendant." Soon after, defense

counsel received an email from the prosecution, stating that the prosecuting attorney had been in contact with an employee of the MBP and learned that this video footage was unavailable because the prison only retained video footage of the cell block for 29 days, after which it was automatically destroyed unless a request had been made to preserve it. Defendant's request for the additional footage was made after the prison's video retention period had elapsed.

At a hearing on defendant's motion, defendant outlined his narrative of what occurred on the day in question. The trial court denied defendant's motion, reasoning that the relevant issue at trial would be whether defendant assaulted Ganzel and thus, defendant would need to show that the footage requested was potentially exculpatory with regard to that issue. There was no indication that the events leading up to the incident would demonstrate that defendant did not commit the crime of which he was accused. Moreover, there was no evidence that the video footage was destroyed in bad faith. Rather, it was destroyed as a function of the surveillance equipment before this case was even filed.

A bench trial was conducted immediately after the trial court ruled on defendant's motion. During the trial, the only evidence presented was (1) Ganzel's testimony, (2) the testimony of the officer who investigated the incident, and (3) the video of the actual incident (which was preserved at the behest of the investigating officer, apparently before the MBP's video retention period had elapsed). The trial court found defendant guilty.

## II. ANALYSIS

Defendant argues that his case should have been dismissed because video footage of the hours immediately preceding the incident were not presented to the parties and were destroyed before they were ever requested, although they contained potentially exculpatory evidence. We disagree. This Court reviews a trial court's decision regarding discovery for an abuse of discretion. *People v Green*, 310 Mich App 249, 252; 871 NW2d 888 (2015). An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes. *Id*.

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). See also *People v Anstey*, 476 Mich 436, 460-461; 719 NW2d 579 (2006) ("[T]he government's failure to preserve potentially exculpatory evidence violates a criminal defendant's due process rights if the defendant can show bad faith on the part of the government."). The defendant bears the burden of proving that the evidence was exculpatory or that the police acted in bad faith. *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017). Where evidence is not preserved due to processes or policies that mandate its automatic or routine destruction, bad faith is typically not proven. *People v Jones*, 301 Mich App 566, 581; 837 NW2d 7 (2013) (defendant could not show bad faith where evidence of traffic stop recordings was destroyed due to police department's policy of automatically destroying recordings six months after the date of the stop, even where the defendant was not arrested until after evidence was destroyed); *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992) ("[T]he routine destruction of taped police broadcasts, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal."); *People v Petrella*, 124 Mich App 745, 753; 336 NW2d 761 (1983) ("Even though the police destroyed these notes 'intentionally', they did not do it either in bad faith or to

deprive defendant of evidence. The police officer testified that the evidence was destroyed pursuant to departmental policy to save space.").

In this case, the evidence indicated that the video footage of the hours immediately preceding the incident was destroyed only because the system used by the MBP automatically erased it in accordance with the prison's video retention period. No evidence has been presented to suggest that the correctional officers, or anyone else, took affirmative steps to erase the footage at any point in time. Further, at trial, defense counsel admitted that (1) the prosecution had not received any information, including the video that was ultimately produced, until after the prison's video retention period had elapsed; and (2) defense counsel had not requested footage of the four-hour period immediately preceding the incident until after the video retention period had passed. From these facts, it appears that neither the police nor the prosecution intentionally destroyed the video footage, let alone in bad faith. Accordingly, defendant cannot prevail. See *Youngblood*, 488 US at 58; *Jones*, 301 Mich App at 581.

Moreover, defendant has failed to demonstrate that footage of the hours preceding the incident would have been exculpatory. In arguing that such evidence would have exonerated him, defendant can only point to his own narrative of potential corruption and conspiracy to extend his period of incarceration among the correctional officers at the MBP. Generally, a defendant must offer more than his or her own account of the events at issue to sufficiently show that the evidence sought would have been exculpatory. *Johnson*, 197 Mich App at 365. Regardless, the footage of the four hours leading up to the incident would not have exonerated defendant because it would not have belied the evidence that defendant spat at Granzel. For these reasons, the trial court's decision did not fall outside the range of principled outcomes, and defendant's conviction must stand.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle

-3-